**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **KEVIN ROSS,**<br>**individually and on behalf of a class of**<br>**similarly situated persons,**<br><br>                    **Plaintiff,**<br><br>     **v.**<br><br>**THE HERSHEY COMPANY,**<br><br>                    **Defendant.** | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Kevin Ross ("Plaintiff") brings suit on behalf of himself and all persons similarly situated who purchased one or more packages of the following: (1) Hershey's Special Dark Mildly Sweet Chocolate; (2) Lily's Extra Dark Chocolate 70% Cocoa; and (3) Lily's Extreme Dark Chocolate 85% Cocoa (hereinafter the "Products").

## PARTIES

1.      Plaintiff Ross is an individual who resides in the Manhattan, New York who, during the Class Period, bought the Hershey's dark chocolate at a retail store in the Manhattan, New York after seeing the the front of the Product package. Based on this representation, Plaintiff believed the Product did not contain any lead. Had Plaintiff know the truth that the Products contained lead he would have paid less for the Product.

2.      Defendant The Hershey Company is incorporated under the laws of the State of Pennsylvania, with a principal place of business located in Hershey, Pennsylvania.

3.      On information and belief, in committing the wrongful acts alleged herein, Defendant in connection with its subsidiaries, affiliates and/or other related entities and their employees planned, participated in and furthered a common scheme to induce members of the public to purchase the Products by means of false, misleading, deceptive and fraudulent representations and omissions, and Defendant participated in the making of such representations and omissions in that it disseminated misrepresentations or caused them to be disseminated.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), the Class Action Fairness Act ("CAFA"), as the matter in controversy exceeds the sum of $5,000,000 (five million dollars) exclusive of interest and costs, and at least one member of the

putative class is a citizen of a state different from Defendant.  None of the exceptions of 28 U.S.C. §1332(d) are applicable.

5.      This Court has personal jurisdiction over Defendant because it conducts and transacts business within the District, and contracts to supply and supplies food products within the District by, among other things, marketing, advertising, and selling the Products. Further, Plaintiff's claims arise out of Defendant's conduct within the District.

6.      Venue is proper because Plaintiff and many class members reside in this District, Defendant does business in this District and in New York, and a substantial part of the events giving rise to the claims occurred in this District.

## STATEMENT OF FACTS

7.      Consumers have become increasingly concerned about the effects of unhealthy chemicals in food products that they and their family members consume.  Companies, such as Defendant, have capitalized on consumers' desire for safe products, and indeed consumers are willing to pay, and have paid, a premium for such food products.

8.      According to Verified Market Research, the dark chocolate market was valued at $56.09 billion in 2021 and is expected to grow to $114.62 billion by 2030.[1]  Indeed, "[g]rowing health benefits associated with cocoa-rich dark chocolates, rising demand for premium dark chocolates as gifts, players introducing more limited-edition seasonal chocolates, increasing online sales, and expanding marketing initiatives are expected to drive the global Dark Chocolate Market during the forecast period."[2]

---

[1] *Dark Chocolate Market Size and Forecast*, VERIFIED MARKET RESEARCH (May 2022), https://www.verifiedmarketresearch.com/product/global-dark-chocolate- market/#:~:text=Dark%20Chocolate%20Market%20was%20val-ued,8.28%25%20from%202022%20to%202030 (last accessed January 03, 2023).
[2] *Id.*

9.      What's more, up to 15% of consumers eat dark chocolate on a daily basis.[3]

10.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains lead, cadmium, or other unsafe and unhealthy substances, especially at the point of sale.  Therefore, consumers must and do rely on Defendant to truthfully and honestly report what their Products contain on their packaging or labels.  Indeed, testing for these chemicals requires expensive and destructive scientific testing.  Given the relatively low price of the Products, no reasonable consumer would engage in such testing before purchasing the Products.

11.     Lead and cadmium are heavy metals.  As described more fully below, the harmful effects of heavy metals are well-documented, particularly on children.  Exposure puts children at risk for lowered IQ, behavioral problems (such as attention deficit hyperactivity disorder), type 2 diabetes, and cancer, among other health issues.  Heavy metals also pose risks to adults.  Even modest amounts of heavy metals can increase the risk of cancer, cognitive and reproductive problems, and other adverse conditions.  As such, it is important to limit exposure.

12.     "No amount of lead is known to be safe."[4]  Exposure to lead may cause anemia, weakness, and kidney and brain damage.[5]  Lead can affect almost every organ and system in the body.  Lead accumulates in the body over time, and can lead to health risks and toxicity, including inhibiting neurological function, anemia, kidney damage, seizures, and in extreme cases, coma and death.  Lead can also cross the fetal barrier during pregnancy, exposing the mother and developing

---

[3] Kevin Loria, *Lead and Cadmium Could be in Your Dark Chocolate*, CONSUMER REPORTS (December 15, 2022), https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/.

[4] *See* https://www.npr.org/sections/thetwo-way/2016/08/13/489825051/lead-levels-below-epa-limits-can-still-impact-your-health (last accessed June 22, 2022).

[5] Centers for Disease Control and Prevention, "Health Problems Caused by Lead," *The National Institute for Occupational Safety and Health (NIOSH)*, https://www.cdc.gov/niosh/top-ics/lead/health.html#:~:text=Exposure%20to%20high%20levels%20of,a%20developing%20ba-by's%20nervous%20system. (last accessed June 22, 2022).

fetus to serious risks, including reduced growth and premature birth. Lead exposure is also harmful to adults as more than 90 percent of the total body burden of lead is accumulated in the bones, where it is stored. Lead in bones may be released into the blood, re-exposing organ systems long after the original exposure.[6]

13.     Cadmium is similarly harmful. "[A]ny cadmium exposure should be avoided."[7] Exposure to cadmium may lead to damage to kidneys, lungs, and bones.[8] "Even relatively low chronic exposure can cause irreversible renal tubule damage, potentially progressing to glomerular damage and kidney failure" and "bone loss often is seen in concert with these effects."[9] This metal is also known to cause cancer and targets the body's cardiovascular, renal, gastrointestinal, neurological, reproductive, and respiratory systems.[10]

14.     In December of 2022, Consumer Reports published a report titled "Lead and Cadmium Could Be in Your Dark Chocolate." The report detailed the results of Consumer Reports' testing of various dark chocolates for lead and cadmium. To determine the risk posed by the chocolates in the test, Consumer Reports measured the chocolates with reference to California's maximum allowable dose level (MADL) for lead (0.5 micrograms) and cadmium (4.1 micrograms).

15.     Consumer Reports analyzed 28 different bars.

---

[6] State of New York Department of Health, "Lead Exposure in Adults: A Guide for Health Care Providers," https://www.health.ny.gov/publications/2584.pdf (last accessed June 22, 2022).
[7] M. Nathaniel Mead, "Cadmium Confusion: Do Consumers Need Protection," *Environ Health Perspect*. 2010 Dec; 118(12): A528-A534, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3002210/ (last accessed June 22, 2022).
[8] *See* Agency for Toxic Substances and Disease Registry, "ToxFAQs for Cadmium," Toxic Substances Portal, https://wwwn.cdc.gov/TSP/ToxFAQs/ToxFAQsDetails.aspx?faqid=47&toxid=15 (last accessed June 22, 2022).
[9] Mead, *supra* note 8.
[10] *See* Occupational Safety & Health, "Cadmium," https://www.osha.gov/cadmium (last accessed June 22, 2022).

16.     Consumer Reports determined that "[f]or 23 of the bars, eating just an ounce a day would put an adult over a level that public health authorities and CR's experts say may be harmful for at least one of those heavy metals."[11]

17.     The Products contained both lead and cadmium in levels above the MADL. Specifically, Hershey's Special Dark Mildly Sweet Chocolate contained 265% of the MADL for lead, Lily's Extra Dark Chocolate 70% Cocoa contained 144% of the MADL for lead, and Lily's Extremely Dark Chocolate 85% Cocoa contained 143% of the MADL for lead and 101% of the MADL for cadmium.[12]

18.     While lead and cadmium can be found in many food sources, the Products, *on their own*, expose consumers to as much as 265% of California's maximum allowable dose level (MADL) in just a single one-ounce serving.  The Products come in as must as 7.56 ounce bars.[13] Imagine receiving over 2000% of the maximum allowable dose of lead from just a single candy bar.

19.     With regard to the results, Tunde Akinleye, a food safety researcher at Consumer Reports who led the project, remarked that "the danger is greatest for pregnant people and young children because the metals can cause developmental problems … but there are risks for people of any age" because frequent exposure to lead can lead to nervous system problems, hypertension, immune system suppression, kidney damage, and reproductive issues.[14]

---

[11] Loria, *supra* note 3.
[12] *Id.*
[13] Walmart, https://www.walmart.com/ip/HERSHEY-S-SPECIAL-DARK-Mildly-Sweet-Chocolate-Giant-Candy-7-56-oz-Bar-25-Pieces/555582083?wmlspartner=wlpa&selected-SellerId=0&wl13=2087&adid=22222222277555582083_117755028669_12420145346&wml-spartner=wmtlabs&wl0=&wl1=g&wl2=c&wl3=501107745824&wl4=pla-294505072980&wl5=9019673&wl6=&wl7=&wl8=&wl9=pla&wl10=8175035&wl11=lo-cal&wl12=555582083&wl13=2087&veh=sem_LIA&gclid=Cj0KCQiA6fafBhC1ARIsAIJjL8kES7tBBHr-vDVBoixwZVuGJ94i-GpRljebjxKXRkdXr5Uq6hI0khVMaAiwTEALw_wcB&gclsrc=aw.ds
[14] *Id.*

20.     Chocolate is made from the cacao bean, which has two main components: cocoa solids and cocoa butter. Together, these are called cacao or cocoa.

21.     Dark chocolate, rather than milk chocolate, was the subject of these tests because dark chocolate has a higher percentage of cacao, at least 65 percent cacao by weight, which is where the Heavy Metals lurk.

22.     These Heavy Metals have made their way into the cacao in two ways: cadmium is taken up through the soil by the cacao plant as it grows, while lead is found typically on the outer shell of cacao beans *after* they are harvested.

23.     However, this does not mean that lead and cadmium exposure is inevitable when consuming dark chocolate.  As Consumer Reports noted, five of the 28 chocolate bars tested were below the MADL for both cadmium and lead, proving that "it's possible for companies to make products with lower amounts of heavy metals—and for consumers to find safer products that they enjoy."[15]

24.     Consumers reasonably rely on the marketing and information on Defendant's labels in making purchasing decisions.  By marketing the Products as containing only dark chocolate ingredients, and not disclosing the presence of cadmium and lead, Defendant misleads reasonable consumers.

25.     Given the negative effects of toxic heavy metals (such as lead and cadmium) on child development and adult health, the presence of these substances in dark chocolate is a material fact to reasonable consumers, including Plaintiff and members of the Class.

26.     Defendant knows that the presence (or risk) of toxic Heavy Metals in its Products is a material fact to reasonable consumers, including Plaintiff and the Class members.

---

[15] *Id.*

27.     Food sellers (such as Defendant) hold a position of public trust.  Consumers believe that they would not sell products that are contaminated with unsafe levels of heavy metals.

28.     Accordingly, consumers trust that the limited selection of foods offered by Defendant have been vetted for their safety for human consumption.

29.     Despite Defendant's knowledge of lead and cadmium in the Products, Defendant failed to provide any warning on the place that every consumer looks when purchasing a product –the packaging or labels—that the Products contain lead and cadmium.

30.     Defendant knew that if the presence (or risk) of toxic Heavy Metals in its Products was disclosed to Plaintiff and the Class members, then Plaintiff and the Class members would be unwilling to purchase them or would pay less for them.

31.     In light of Defendant's knowledge that Plaintiff and the Class members would be unwilling to purchase the Products or would pay less for the Products if they knew that they contained (or risked containing) toxic Heavy Metals, Defendant intentionally and knowingly concealed this fact from Plaintiff and the Class members and did not disclose the presence (or risk) of these toxic Heavy Metals on the labels of the Products.

32.     Defendant knew or should have known that Plaintiff and the Class members would rely upon the packages of the Products and intended for them to do so, but failed to disclose the presence (or risk) of Heavy Metals.

33.     Defendant knew or should have known that it owed consumers a duty of care to adequately test for Heavy Metals in the Products, which it failed to do.

34.     Additionally, Defendant knew or should have been aware that a reasonable consumer could consume a one-ounce serving of the Product daily, leading to repeated exposure to the Heavy Metals at unsafe levels.

35.     As such, Defendant has a duty to disclose that consumption of the Products could expose consumers to high levels of toxic Heavy Metals.

36.     Defendant knew or should have known it could control the levels of Heavy Metals in the Products by properly monitoring the ingredients for Heavy Metals and adjusting any cultivation practices to reduce or eliminate the high levels of Heavy Metals.

37.     It is reasonable to assert that Defendant knew or should have known it could control the levels of Heavy Metals in its Products because there are other chocolate manufacturers who have been able to produce dark chocolate with significantly less cadmium and lead than Defendant's Products.

38.     Prior to purchasing the Products, Plaintiff and the Class members were exposed to, saw, read, and understood Defendant's labels, but Defendant failed to disclose the presence (or risk) of Heavy Metals.

39.     Defendant's concealment was material because people are concerned with what is in the food that they are putting into their bodies, as well as parents and caregivers being concerned with what they are feeding to the children in their care.  Consumers such as Plaintiff and the Class Members are influenced by the ingredients listed, as well as any warnings (or lack thereof) on the food packaging they buy.  Defendant knows that if it had not omitted that the Products contained lead and cadmium and that the Products were not safe or healthy for consumption then Plaintiff and the Class would not have paid a premium for the Products (or purchased them at all).

40.     As a result of Defendant's concealment of the fact that the Products contained toxic Heavy Metals, Plaintiff and the Class members reasonably believed that Defendant's Products were free from substances that would negatively affect children's development as well as their own health.

41.     Had Plaintiff and the Class members known the truth—*i.e.*, that the Products contained (or risked containing) toxic Heavy Metals, rendering them unsafe for consumption by children and adults—they would not have been willing to purchase them or would have paid less for them.

42.     Therefore, as a direct and proximate result of Defendant's omissions concerning the Products, Plaintiff and the Class members purchased the Products.

43.     Plaintiff and the Class members were harmed in the form of the monies they paid for the Products which they would not otherwise have paid had they known the truth about the Products.  Since the presence (or risk) of toxic Heavy Metals in the Products renders them unsafe for human consumption, the Products that Plaintiff and the Class members purchased are worthless or are worth less than Plaintiff and the Class paid for them.  What's more, there are other dark chocolate products on the market which contain significantly lower levels of cadmium and lead than Defendant's Products, meaning that there are safer alternatives to Defendant's Products.

44.     The Products' labels are materially deceptive, false and misleading given Defendant's omission about the presence (or risk) of Heavy Metals as described above.

## CLASS ACTION ALLEGATIONS

45.     Plaintiff brings this case as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) on behalf of himself and a class defined as follows:

> All persons who purchased the Products within New York for personal, family, or household use within three years of the filing of this Complaint. ("Class")

46.     While Plaintiff is presently unaware of the current number of sales, based on the ubiquity of the Products in retail stores in New York there are likely tens of thousands of Class members.  The Class is sufficiently numerous such that joinder is impracticable.

47.     There are issues of law and fact common to the Class, which common issues predominate over any issues specific to individual class members. The principal common issues include: whether Defendant's conduct as alleged is consumer oriented; whether the omission of the presence of lead and/or cadmium in the Products is materially misleading; whether Defendant's conduct constitutes the violations of law alleged herein; whether Plaintiff and class members are entitled to the relief requested. All class members were subjected to the same unlawful conduct, as they all saw the same labeling of the Products and all purchased the Products.

48.     Plaintiff's claims are typical of the claims of class members. Plaintiff and all class members purchased the Products that, for all intents and purposes, were identically labeled so as to mislead and deceive consumers.  All claims are based on the same legal theories, and all arise from the same course of conduct.

49.     Plaintiff will adequately and fairly protect the interests of all class members. Plaintiff is committed to a vigorous and successful prosecution of this action, is familiar with the legal and factual issues involved, and has retained counsel experienced in the litigation of false labeling and false advertising cases, including cases making claims similar to those asserted here. Neither Plaintiff nor counsel have any interest or conflict that might cause them to not vigorously pursue this action.

50.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since: (a) the economic harm suffered by any individual class member is likely not substantial, hence the expense and burden of individual litigation would be economically unfeasible; and (b) the prosecution of separate lawsuits by individual class members would entail the risk of inconsistent and conflicting adjudications that could establish conflicting

standards of conduct for Defendant; and (c) there will be no unusual or extraordinary management difficulties in administering this case as a class action.

51.    Defendant has acted on grounds generally applicable to the class with respect to the matters alleged herein, thereby making the relief sought appropriate with respect to the class as a whole.

## CAUSES OF ACTION
## FIRST CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and Other Class Members)**

52.    Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

53.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

54.    The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the other Class Members seek monetary damages.

55.    Defendant misleadingly and deceptively represents the Products to consumers.

56.    Defendant's unlawful consumer-oriented conduct is misleading in a material way because Defendant omitted the fact that lead and/or cadmium were present in the Products, and at dangerous levels.

57.    Plaintiff and other Class Members paid a premium for the Products.

58.    Defendant made its deceptive and misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

59.    Plaintiff and other Class Members have been injured inasmuch as they, having

viewed the Products label, paid a premium for the Products which, based on Defendant's omissions, was misleading and deceptive. Accordingly, Plaintiff and other Class Members paid more than what the Products they bargained and received were worth.

60.     Defendant's conduct as alleged herein constitutes a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and other members of the Class have been damaged thereby.

61.     As a result of Defendant's recurring deceptive acts and practices, Plaintiff and other Class Members are entitled to monetary and compensatory damages, interest, and attorneys' fees and costs. This includes actual damages under GBL § 349, as well as statutory damages of $50 per unit purchased pursuant to GBL § 349.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and Other Class Members)**

62.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

63.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

64.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

65.     Defendant's labeling contains deceptive and materially misleading omissions

concerning its Products inasmuch as it omits that the Products contain lead and/or cadmium.

66.     Plaintiff and other Class Members have been injured inasmuch as they, having viewed Defendant's label, paid a premium for the Products. Plaintiff and other Class Members paid more than what the Products they bargained for and received were worth.

67.     Defendant engaged in its unlawful conduct as alleged herein willfully, wantonly, and with reckless disregard for the truth.

68.     Defendant's misrepresentations and omissions are evident on the packaging of the Product.

69.     Defendant's material misrepresentations and omissions were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Product were and continue to be exposed to Defendant's unlawful conduct.

70.     As a result of Defendant's recurring, acts and practices in violation of GBL § 350, Plaintiff and class members are entitled to monetary and compensatory damages, interest, and attorneys' fees and costs, as well as statutory damages of $500 per Product purchased.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the members of the Class request that this Honorable Court:

(i)     enter an order certifying the proposed Class under Federal Rule of Civil Procedure 23(a) and (b)(3), as set forth above;

(ii)     enter an order declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

(iii)     issue judgment declaring that Defendant has committed the violations of law alleged herein;

(iv)     issue judgment awarding statutory damages in the maximum amount for which the law provides;

(v)     issue judgment awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

(vi)     issue judgment providing for any and all equitable monetary relief the Court deems appropriate;

(vii)     issue judgment awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

(viii)     issue judgment awarding Plaintiff her reasonable costs and expenses of suit, including attorneys' fees;

(ix)     issue judgment awarding pre- and post-judgment interest to the extent the law allows; and

(x)     awarding such further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff requests jury trial on all claims so triable.


Date:  March 13, 2023                    Respectfully submitted,


                                        **REESE LLP**

                                        ___*/s/ Charles D. Moore*_____
                                        Charles D. Moore
                                        100 South 5th Street, Suite 1900
                                        Minneapolis, Minnesota 55402
                                        Telephone: 212-643-0500
                                        Email: *cmoore@reesellp.com*

15

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Email:  *mreese@reesellp.com*

*Attorneys for Plaintiff and the Proposed Class*